UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | | | |
|---|---|---|---|
| IN RE: | ) | CASE NO. | 10-33258 (LMW) |
| ANTHONY HALL, | ) | CHAPTER | 7 |
| DEBTOR. | ) | | |
| ALBERTHA DENNIS, | ) | ADV. PRO. NO. | 11-3004 (LMW) |
| PLAINTIFF | ) | ECF NO. | 1 |
| vs. | ) | | |
| ANTHONY HALL, | ) | | |
| DEFENDANT. | ) | | |

## APPEARANCES

Kathleen M. Flaherty, Esq.                    Attorney for Plaintiff
Statewide Legal Services of CT, Inc.
425 Main Street, 4th Floor
Middletown, CT 06457

Anthony Hall                                  Defendant/Debtor *Pro Se*
139 Johnson Street
Middletown, CT 06457

**MEMORANDUM OF DECISION AND ORDER
RE: COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT**

Lorraine Murphy Weil, Chief United States Bankruptcy Judge

The matter before the court is the complaint (ECF No. 1, the "Complaint")[1] of the above-referenced plaintiff (the "Plaintiff") seeking a determination that a certain alleged debt owing to her from the above-referenced defendant (the "Debtor") is not discharged in this chapter 7 bankruptcy case pursuant to 11 U.S.C. §§ 523(a)(4) and/or 523(a)(6). This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334 and that certain order dated September 21, 1984 of the District Court (Daly, J.).[2] This memorandum constitutes the findings of fact and conclusions of law required by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

I.  **BACKGROUND**

This chapter 7 case was commenced by the Debtor by petition filed on October 28, 2010. (*See* Case ECF No. 1.) The Debtor received his chapter 7 discharge on February 10, 2011. (*See* Case ECF No. 14.)

The Plaintiff commenced this adversary proceeding by the Complaint filed on January 25, 2011. (*See* ECF No. 1.) The Complaint seeks (among other things) a declaration that the below-described debt (the "Debt") owing by the Debtor to the Plaintiff was not discharged in this chapter 7 case pursuant to 11 U.S.C. §§ 523(a)(4) and/or 523(a)(6). The Debtor filed his answer to the Complaint on March 30, 2011. (*See* ECF No. 18.)

A trial (the "Trial") was held on the Complaint on November 17, 2011. At the Trial, the Plaintiff and the Debtor testified for the Plaintiff; the Debtor was permitted to make statements under

---

[1] References herein to the docket of this chapter 7 case appear in the following form: "Case ECF No. __." References herein to the docket of this adversary proceeding appear in the following form: "ECF No. __."

[2] That order referred to the "Bankruptcy Judges for this District" "all cases under Title 11, U.S.C., and all proceedings arising under Title 11, U.S.C., or arising in or related to a case under Title 11, U.S.C. . . . ."

- 2 -

oath on his behalf and was cross-examined by counsel for the Plaintiff. The Plaintiff and the Debtor placed documentary evidence into the record.[3] At the conclusion of the Trial, the court took the matter under advisement (subject to post-trial briefing). Post-trial briefing is complete[4] and the matter now is ripe for the decision set forth below.

## II.  FACTS

On or about June 1, 2007, the Plaintiff entered into a Residential Lease (Plaintiff Exh. A, the "Lease") with the Debtor to lease property known as 99 Grove Street, Middletown, CT (the "Premises"). The Premises was an apartment within a side-by-side duplex. (*See* Oral Record of Trial at 11:14:15 *et seq.* (testimony of the Debtor).) The Debtor was a "landlord" and the Plaintiff was a "tenant" as defined by Title 47A ("Landlord and Tenant") of the Connecticut General Statutes and subject to the obligations provided for therein. *See* Conn. Gen. Stat. § 47a-1 *et seq.* The Lease provided for a term of one (1) year for monthly rent of $900.00. The Lease also required the Plaintiff to pay a security deposit of $1,800.00 (the "Security Deposit") to the Debtor (*see* Plaintiff Exh. A), which she paid.[5]

---

[3]  References herein to those exhibits appear in the following form: "Plaintiff Exh. __" and "Debtor Exh. ___." References to the oral record of the Trial appear in the following form: "Oral Record of Trial at __:__:__."

[4]  The Debtor did not file a post-trial brief.

[5]  The Debtor testified that he asked the Plaintiff for $2,000.00 as the Security Deposit but only received $1,800.00. (*See* Oral Record of Trial at 10:41:56 *et seq.* (testimony of the Debtor).) He stated that $2,000.00 sum included the cost of his holding the Premises for the Plaintiff until she was able to move into the Premises (the lease on her then-apartment had not expired). (*See id.*; *see also id*. at 11:20:21 *et seq.* (testimony of the Debtor).) The court notes that under Conn. Gen. Stat. § 47a-21(b), a landlord is permitted to demand a security deposit from a tenant of no more than two months' rent. It is not clear whether a landlord may demand excess monies (other than a security deposit) to hold property for a prospective tenant. The resolution of that issue is not necessary to a decision on the matter before the court.

On or about December 8, 2008, the Plaintiff vacated the Premises. (*See* Oral Record of Trial at 10:35:33 *et seq.* (testimony of the Plaintiff).) Subsequently, she requested the return of the Security Deposit in writing. (*See id.*) By letter dated January 28, 2009, the Debtor sent the Plaintiff an accounting with respect to the Security Deposit as follows:

```
Kitchen Counter Top on December 3, 2008
      Cost to replace                                 $1406.01

Lock Out
      Locksmith August 2, 2008                          25.00
      Locksmith September 13, 2008                     132.00

Aiello Plumbing
      Toilet
      clogged and leaking on January 15, 2009         346.00

Garbage Disposal
      replace                                         106.00

Screen Door Repair                                     75.00

Total Amount of Damages                            $2,090.01
Less Security Deposit                              $1,800.00
                                                   $  209.01   Balance Owed
```

(Debtor Exh. 1, the "Accounting"). The Debtor testified that all of the foregoing damages to the Premises allegedly caused by the Plaintiff resulted in repairs of $2,090.01 and when he deducted the Security Deposit from that amount, there was a balance owed to the Debtor of $290.01. (*See* Debtor Exh. 1; Oral Record of Trial at 11:12:46 *et seq.* (testimony of the Debtor).) Each of the alleged damages as claimed in the Accounting will be addressed below.

The Debtor testified that he initially deposited the Security Deposit in an escrow account at Webster Bank pursuant to the CT Statute (as defined below) but ended up closing the account due to nonpayment of rents by other tenants and used the Security Deposit to cover expenses presumably

related to other tenants. (*See* Oral Record of Trial at 11:30:10 *et seq.* (testimony of the Debtor).)

He testified that the Plaintiff paid her rent. (*See id.*)

The Debtor testified that he had been a landlord for about twenty-five (25) years (*see* Oral Record of Trial at 11:14:15 *et seq.* (testimony of the Debtor)) and that a foreclosure proceeding had been commenced against the Premises in or about April, 2010 (*see id.* at 11:27:21 (testimony of the Debtor)). He testified that he last paid the mortgage on the Premises in or about January, 2010. (*See id.*) On or about November 1, 2010, the Plaintiff filed a Small Claims Writ and Notice of Suit against the Debtor in State Court seeking $3,681.00 plus court costs (the "Small Claims Action"). (*See* Plaintiff Exh. C.) As noted above, the Debtor commenced the instant bankruptcy case on October 28, 2010.[6]

## III.    ANALYSIS UNDER CONN. GEN. STAT. § 47a-21

### A.    The Relevant Statutes

Conn. Gen. Stat. § 47a-21 (hereafter, the "CT Statute") provides in relevant part:

(a) **Definitions.** As used in this chapter:
. . .
(2) "Escrow Account" means any account at a financial institution which is not subject to execution by the creditors of the person in whose name such account is maintained and includes a clients' funds account.
. . .
(10) "Security deposit" means any advance rental payment other than an advance payment for the first month's rent and a deposit for a key or any special equipment.
. . .
(13) "Tenant's obligations" means (A) the amount of any rental or utility payment due the landlord from a tenant; and (B) a tenant's obligations under the provisions of [Conn. Gen. Stat.] section 47a-11.

---

[6]    Counsel for the Plaintiff stated that the Debtor did not notify the court in the Small Claims Action of his bankruptcy filing; she and her client made that notification to the court. (*See* Oral Record of Trial at 10:31:11 *et seq.* (statement of Plaintiff's counsel).)

(b) **Amount of security deposit.** (1) In the case of a tenant under sixty-two years of age, a landlord shall not demand a security deposit in an amount or value in excess of two months' periodic rent which may be in addition to the current month's rent.

. . .

(c) **Exemption from attachment and execution. Assignment to successor.** Any security deposit paid by a tenant shall remain the property of such tenant in which the landlord and his successor shall have a security interest . . . to secure such tenant's obligations. A security deposit shall be exempt from attachment and execution by the creditors of the landlord or his successor and shall not be considered part of the estate of the landlord or his successor in any legal proceeding . . . .

(d) **Payment of security deposit and interest at termination of tenancy.** (1) Within the time specified in subdivisions (2) and (4) of this subsection, the person who is the landlord at the time a tenancy is terminated . . . shall pay to the tenant or former tenant: (A) The amount of any security deposit that was deposited by the tenant with the person who was landlord at the time such security deposit was deposited less the value of any damages which any person who was a landlord of such premises at any time during the tenancy of such tenant has suffered as a result of such tenant's failure to comply with such tenant's obligations; and (B) any accrued interest due on such security deposit as required by subsection (i) of this section . . . .

(2) Upon termination of a tenancy, any tenant may notify his landlord in writing of such tenant's forwarding address.[7] Within thirty days after termination of a tenancy, each landlord . . . shall deliver to the tenant or former tenant at such forwarding address either (A) the full amount of the security deposit paid by such tenant plus accrued interest as provided in subsection (i) of this section, or (B) the balance of the security deposit paid by such tenant plus accrued interest as provided in subsection (i) of this section after deduction for any damages suffered by such landlord by reason of such tenant's failure to comply with such tenant's obligations, together with a written statement itemizing the nature and amount of such damages. Any such landlord who violates any provision of this subsection shall be liable for twice the amount or value of any security deposit paid by such tenant, except that, if the violation is the failure to deliver the accrued interest, such landlord shall only be liable for twice the amount of such accrued interest.

. . .

(h) **Escrow deposit.** (1) Each landlord shall immediately deposit the entire amount of all security deposits received by him on or after October 1, 1979, from his tenants into one or more escrow accounts for such tenants in a financial institution. Such landlord shall be escrow agent of such account . . . .

---

[7] During Trial, the Debtor did not dispute that he had a forwarding address for the Plaintiff.

>    (2) Each landlord . . . shall maintain each such account as escrow agent and shall not withdraw the amount of any security deposit or accrued interest on such amount, as provided in subsection (i) of this section, that is in any escrow account from such account except as provided in this section.
>
>    . . .
>
>    (4) No person shall withdraw funds from any escrow account except as follows: (A) Within the time specified in subsection (d) of this section, each escrow agent shall withdraw and disburse the amount of any security deposit due to any tenant upon the termination of such tenancy, in accordance with subsection (d) of this section, together with accrued interest thereon as provided in subsection (i) of this section. (B) At the time provided for in subsection (i) of this section, each escrow agent shall withdraw from such account and pay to each tenant any accrued interest due and payable to any tenant in accordance with the provisions of said subsection. (C) The escrow agent may withdraw and personally retain interest credited to and not previously withdrawn from such account to the extent such interest exceeds the amount of interest being earned by tenants as provided in subsection (i) of this section. (D) The escrow agent may withdraw and personally retain the amount of damages withheld, in accordance with the provisions of subsection (d) of this section, from payment of a security deposit to a tenant. (E) The escrow agent may at any time during a tenancy withdraw and pay to a tenant all or any part of a security deposit together with accrued interest on such amount as provided in subsection (i) of this section. (F) The escrow agent shall withdraw and disburse funds in accordance with the provisions of subdivision (3) of this subsection. (G) The escrow agent may transfer any escrow account from one financial institution to another and may transfer funds from one escrow account to another provided that all security deposits in escrow accounts remain continuously in escrow accounts.
>
>    (i) **Payment of interest on security deposits.** (1) On and after July 1, 1993, each landlord . . . shall pay interest on each security deposit received by such landlord at a rate [specified in this subsection, "Interest"]. . . .

Conn. Gen. Stat. Ann. § 47a-21 (West 2012).

Conn. Gen. Stat. § 47a-11 (**Tenant's responsibilities)** provides in pertinent part:

A tenant shall: (a) Comply with all obligations primarily imposed upon tenants by applicable provisions of any building, housing or fire code materially affecting health and safety; (b) keep such part of the premises that he occupies and uses as clean and safe as the condition of the premises permit; (c) remove from his dwelling unit all ashes, garbage, rubbish and other waste in a clean and safe manner to the place provided by the landlord pursuant to subdivision (5) of subsection (a) of section 47a-7; (d) keep all plumbing fixtures and appliances in the dwelling unit or used by the tenant as clean as the condition of each such fixture or appliance permits; (e) use all electrical, plumbing, sanitary, heating, ventilating, air conditioning and other facilities and appliances, including elevators, in the premises in a reasonable manner; (f) *not wilfully or negligently destroy, deface, damage,*

*impair or remove any part of the premises or permit any other person to do so*; (g) conduct himself and require other persons on the premises with his consent to conduct themselves in a manner that will not disturb his neighbors' peaceful enjoyment of the premises or constitute a nuisance, as defined in section 47a-32, or a serious nuisance, as defined in section 47a-15; and (h) if judgment has entered against a member of the tenant's household pursuant to subsection (c) of section 47a-26h for serious nuisance by using the premises for the illegal sale of drugs, not permit such person to resume occupancy of the dwelling unit, except with the consent of the landlord.

Conn. Gen. Stat. Ann. § 47a-11 (West 2012) (emphasis added).

### B.    Is there a "debt" within the purview of Section 523

The evidence establishes that the tenancy here terminated on or about December 8, 2008 when the Plaintiff vacated the Premises. *See Roberts v. Gordon*, No. 1007965, 2009 WL 2872862, at *1 (Conn. Super. Ct. Aug. 10, 2009) ("Termination of tenancy as used in th[e CT S]tatute is considered to be the date the tenant vacates."). The CT Statute then required the Debtor, within thirty (30) days, to either return the Security Deposit in full plus interest or return the balance of the Security Deposit plus accrued interest along with a "written statement itemizing the nature and amount of . . . [any] damages" resulting from the Plaintiff's failure to comply with her tenant obligations. *See* Conn. Gen. Stat. § 47a-21(d)(2); *see also Birney v. Barretta*, No. CV NH-5079, 1993 WL 307685, at *6 (Conn. Super. Ct. July 26, 1993), *aff'd*, 36 Conn. App. 928 (1994) ("The refund or the accounting must be delivered to the tenant within 30 days after the tenant vacates."). Here, thirty days ran on or about January 7, 2009 and the Debtor responded by letter dated January 28, 2009 (*see* Plaintiff Exh. B). Because the Debtor's response was untimely, the court concludes that the Debtor violated Conn. Gen. Stat. § 47a-21(d)(2), and in accordance with that section, the Debtor is liable to the Plaintiff for double the value of the Security Deposit or $3,600.00 (plus

Interest). *See Roberts, supra* ("A landlord violating the time requirements shall be liable for twice the amount or value of any security deposit paid by the tenant.").[8]

With respect to that amount, the court must determine if any of the damages asserted by the Debtor in the Accounting which resulted from the Plaintiff's alleged failure to comply with her tenant obligations were proper deductions. "It is axiomatic that the burden of proving damages is on the party claiming them." *Expressway Assocs. II v. Friendly Ice Cream Corp. of Connecticut*, 218 Conn. 474, 476 (1991). Further, in order "[t]o recover damages for injury to . . . property the plaintiff must present evidence which affords a reasonable basis for measuring . . . loss." *Ferri v. Pyramid Constr. Co.,* 186 Conn. 682, 691 (1982) (internal quotation marks omitted).

Generally, a tenant is liable for any willful or negligent damage to property. *See Agostino*, *supra* at *5. *See also* Conn. Gen. Stat. § 47a-11(f), *supra*. Further,

> "[s]ince tenant liability must be based on willful or negligent conduct, the mere fact of damage does not necessarily make the tenant liable. Proof of property damage requires evidence. The landlord bears the burden of proof on all elements of a damage claim. This means that the landlord must prove that (a) the damage occurred,

---

[8] There may be an issue as to whether a landlord may deduct the cost of damages caused by a former tenant from the security deposit if that landlord has failed to give a timely response. *Compare Ivaldi v. Millette,* No. CV9866077S, 2001 WL 951328 (Conn. Super. Ct. July 20, 2001) (After concluding that "the resolution of th[e] case . . . [was] controlled, not by what is equitable, but by statutory fiat which mandates that the . . . [tenant] prevail because the . . . [landlord] breached the time limits set forth" in the CT Statute, the court awarded the tenant twice the value of the security deposit because the landlord failed to either deliver a written itemization of damages or the full refund within thirty days even though the court found the claim for damages to be "necessary and reasonable."), *with Agostino v. Cary*, No. CV090006838, 2011 WL 5307381, at *4 (Conn. Super. Ct. Oct. 20, 2011) ("The court finds that . . . [landlord] has failed to provide a timely refund or accounting of the security deposit within the strict confines set forth in the [CT S]tatute . . . . However, any offset [for damage to the premises] must be calculated against the doubled deposit."). *Cf.* Conn. Gen. Stat. § 47a-21(g) ("This section does not preclude the landlord or tenant from recovering other damages to which he may be entitled."). However, the court does not need to resolve that issue here because the Plaintiff has conceded that "a landlord who fails to give notice to the tenant may still set off damages." (*See* ECF No. 40 at 4 (Plaintiff's Post Trial Brief).)

- 9 -

(b) it exceeded normal wear and tear, and (c) it was caused by the tenant. Damage may be shown either by direct evidence or circumstantially. However, a tenant is not liable for damages that already existed when he moved into the apartment or for damage which occurred after he vacated. Similarly, he is not liable for damage caused by persons for whom he is not responsible."

"The tenant is also not liable for what is usually described as 'normal' or 'reasonable' wear and tear.

. . .

"The landlord must also establish sufficient evidence of the amount of the damage to remove a judgment from the area of speculation. This will not ordinarily require expert testimony or appraisals, but it does require the presentation of some evidence from which a court can make a reasonable estimate of the amount to be awarded."

*Agostino*, 2011 WL 5307381, at *5 (citation omitted). The Plaintiff generally disputes the deductions and denies any negligent conduct on her part. She contends that the damage claimed by the Debtor in the Accounting were the result of normal wear and tear.

### **The Toilet**

The toilet was about five (5) years old. (*See* Oral Record of Trial at 11:31:29 *et seq.* (testimony of the Debtor).) The Debtor stated that the Plaintiff was negligent with respect to the toilet because her children would periodically drop things into the toilet and clog up the toilet. (*See id.* at 11:36:44.) He stated that on one occasion, he pulled a bottle from the toilet. (*See id.* at 10:42:35 *et seq.*) The Plaintiff denied any of the foregoing and stated that the toilet would shake and brought that to the Debtor's attention. (*See id.* at 11:43:09 *et seq.*) The Debtor did not testify regarding the shakiness of the toilet and did not allege any negligence on the Plaintiff's part with respect to that particular problem with the toilet.

The Debtor submitted two bills into evidence from "Home Services" dated January 2009 for a total of $346.00. (*See* Debtor's Exh. 1 (attachments).)[9] For the most part, the bills are not very legible but the court is able to determine that Home Services was called to the Premises with regard to a "toilet clogg[sic] and leaking." For that repair, Home Services (among other things) "reset [the] water closet with [a] new seal." It appears that the repair done to the toilet addresses the shakiness of the toilet as opposed to a clog. As stated, the Debtor testified only with respect to the Plaintiff's negligence in clogging the toilet. Furthermore, the Debtor testified that the toilet had been replaced. However, the bills from Home Services does not support that assertion and the court will not credit that testimony. Because the Debtor presented no evidence of repair to the toilet that resulted from a clog caused by the Plaintiff's alleged negligence, the court is unable to conclude that the deduction in respect of the toilet from the Security Deposit was proper. Accordingly, that deduction will not be allowed.

**The Lockouts**

The Debtor testified that the Plaintiff called him on at least three (3) occasions because she was locked out the Premises. At least two of those lockouts occurred in 2008. (*See* Accounting.) The Debtor deducted $157.00 from the Security Deposit with respect to the lockouts. However, the receipt relied upon by the Debtor to support the charges for the lockouts is for $109.78 and is dated November 2007 (*see* Debtor's Exh. 2). The Debtor testified that that charge was for some "tumbling work" and "rebuilding" of the lock. (*See* Oral Record of Trial at 11:01:18 *et seq*. (testimony of the

---

[9] The court gives no weight to the Plaintiff's argument that the deduction was improper because the repair to the toilet was made a month after she vacated the Premises. (*See* ECF No. 40 at 6.) That is because a repair made after the Plaintiff vacated the Premises could have been caused by Plaintiff's negligence and it is the Debtor's burden to prove such negligence.

- 11 -

Debtor).)  However, the only evidence before the court is for lockouts that occurred in 2008 supported by a 2007 bill, which the court cannot consider.  There is no other evidence substantiating the claim with respect to the lockouts before the court.  The Debtor has therefore failed to carry his burden and the deductions for the lockouts are improper.

### **The Screen Door**

The Debtor testified that he also charged the Plaintiff $75.00 for the repair/rebuilding of a screen door.  (*See* Oral Record of Trial at 11:08:29 *et seq.* (testimony of the Debtor).)  He did not have a receipt for the repair of the screen door (*see id.* at 11:27:21 *et seq*.) and the door was about seven (7) years old (*see id.* at 11:31:29 *et seq.*).  Without a receipt for the alleged expense with respect to the screen door or other persuasive evidence, the court is unable to determine that the deduction for the screen door was appropriate.  Therefore, the deduction of $75.00 for the screen door will not be allowed.

### **The Garbage Disposal**

The Debtor testified that the Plaintiff called him on at least three occasions to repair the garbage disposal.  He testified that he had to replace the garbage disposal at a cost of $106.00.  (*See id.* at 11:09:40 *et seq.* (testimony of the Debtor).)  The garbage disposal was about two years old.  (*See id.* at 11:31:29 *et seq.*)  The Debtor testified that the Plaintiff was negligent with respect to the garbage disposal because her children would drop marbles down the disposal which resulted in damages.  (*See id.* at 11:36:44 *et seq.*)  The Plaintiff denied any knowledge of marbles in the garbage disposal and testified that, on at least one occasion, all that was needed to repair the garbage disposal was to press the reset button.  (*See id.* at 11:43:09 *et seq.* (testimony of the Plaintiff).)  The Debtor deducted $106.00 for the cost of replacing the garbage disposal and a receipt for that amount was

admitted into evidence. (*See* Debtor's Exh. 1 (attachments).) The court finds the Debtor's testimony to be persuasive and finds the deduction with respect to the garbage disposal to be proper.

### The Countertop

The Debtor testified that there was a gash on the countertop that was about one inch wide and one-half inch deep. (*See* Oral Record of Trial at 11:10:25 *et seq.* (testimony of the Debtor).) He testified that the countertop was about three (3) years old. (*See id.* at 11:31:29 *et seq.*) He stated that he went to Home Depot and paid $1,406.00 for a new countertop. (*See id.*) The Debtor entered into evidence a "quote" for that amount from Home Depot. (*See* Debtor Exh. 1 (attachments).) However, the "installation site" for the "quote[d]" countertop appears to have been 139 Johnson Street, Middletown, the Debtor's residence, and not the Premises. (*See id.*) Because the document is a "quote" with an installation site that was not the Premises, the court can give no weight to the document. Without a receipt to reflect work done on the countertop at the Premises, the court determines that the deduction of $1,406.00 for the countertop was improper.

Accordingly, the court concludes that a total allowed deduction of $106.00 from the Security Deposit was appropriate and the balance owed to the Plaintiff is $3,494.00 (plus Interest, the "Debt"). The court must now determine if the Debt is dischargeable pursuant to 11 U.S.C. § 523(a)(4) and/or § 523(a)(6).

### IV. ANALYSIS OF DISCHARGEABILITY

#### A. Dischargeability (In General)

11 U.S.C. § 523 provides in relevant part as follows:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt–

. . .

>   (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; [or]
>
>   . . .
>
>   (6) for willful and malicious injury by the debtor to another entity or to the property of another entity . . . .

11 U.S.C.A. § 523 (West 2012).  Exceptions to discharge must be strictly construed in favor of the debtor in order to effectuate the fresh start policy of bankruptcy. *See Rosenblit v. Kron (In re Kron)*, 240 B.R. 164, 165 (Bankr. D. Conn. 1999) (Krechevsky, J.).  The party seeking to establish an exception to the discharge of a debt bears the burden of proof by a preponderance of the evidence. *See Grogan v. Garner,* 498 U.S. 279 (1991); *Ramos v. Rivera (In re Rivera),* 217 B.R. 379, 384 (Bankr. D. Conn. 1998) (Dabrowski, J.).

   **1.   Section 523(a)(4)**

   **a.   "Fiduciary"**

Under Bankruptcy Code § 523(a)(4), "[t]he question of whether a defalcation has occurred is reached only when the threshold determination that the debtor acted in a fiduciary capacity has been made." *Andy Warhol Found. for Visual Arts, Inc. v. Hayes (In re Hayes)*, 183 F.3d 162, 170 (2d Cir. 1999). "Although the precise scope of the defalcation exception is a question of federal law, its application frequently turns upon obligations attendant to relationships governed by state law." *Id.* at 166. What constitutes a fiduciary relationship under Connecticut law is a separate issue from what constitutes a "fiduciary" within the purview of Section 523(a)(4) of the Bankruptcy Code. *See May v. Lyon (In re Lyon )*, 348 B.R. 9, 22–24 (Bankr. D. Conn.2006). Under Connecticut law, a fiduciary relationship may be "implied in law due to the factual situations surrounding the transactions and relationships of the parties to each other and to the questioned transactions." *Taylor*

*v. Mitchell College*, No. 561822, 2002 WL 31758412, at *3 (Conn. Super. Ct. Nov. 15, 2002). "In the seminal cases in which [the Connecticut Supreme Court] has recognized the existence of a fiduciary relationship, the fiduciary was either in a dominant position, thereby creating a relationship of dependency, or was under a specific duty to act for the benefit of another." *Hi–Ho Tower, Inc. v. Com–Tronics, Inc.*, 255 Conn. 20, 38 (2000).

"[A] security deposit . . . is the tenant's property . . . that the landlord holds . . . for the tenant's benefit subject to the tenant's fulfilling all . . . obligations under the lease." *Beal Bank, SSB v. Airport Indus. Ltd. P'ship*, 74 Conn. App. 460, 463 (2003). Conn. Gen. Stat. § 47a-21(h)(1) requires a landlord to "immediately" deposit the security deposit in an escrow account and appoints the landlord the escrow agent for the account. *See id.* As escrow agent, the landlord is prohibited from withdrawing any portion of the security deposit from the escrow account except as stated in Section 47a-21(h)(4), which includes the return of the security deposit to the tenant or deducting amounts for damages caused by the tenant. *See id.* Under Connecticut law, the obligations imposed by Section 47a-21(h) are sufficient to create a fiduciary relationship between a landlord (or his/her agent) and a tenant.

> Monies retained in the [escrow] account belong to the tenant, by operation of law. In agreeing to act as escrow agent, the defendant . . . agreed to assume duties and responsibilities under the lease agreements, and the appropriate provisions of the General Statutes. A breach of these duties owed to . . . [the tenant] in its capacity as escrow agent, may subject . . . [the defendant] to damages proximately caused by its breach of duty.
>
> As escrow agent, . . . [the defendant] exercised control over funds belonging to the tenant. It therefore assumed a fiduciary responsibility concerning those funds . . . .

*See Ingels v. Saldana,* No. CV040411529S, 2006 WL 1229938, at *4 (Conn. Super. Ct. Apr. 17, 2006), *aff'd*, 103 Conn. App. 724 (2007) (footnote omitted). *See also Murphy v. Grigas*, No. CV-H-

8903-3129SW, 1992 WL 436241, at *6 (Conn. Super. Ct. Dec. 4, 1992) (The defendant "utilized plaintiffs' security deposit for his own personal needs; failed to keep those funds in an escrow account and failed to discharge his fiduciary duties owed to the plaintiffs . . . in violation of various provisions of § 47a-21.").[10]

However, not every state-law fiduciary is a Section 523(a)(4) "fiduciary." That is because the "definition of 'fiduciary capacity' is a matter of federal law." *Bologna*, *supra* at 632. The Second Circuit has rejected the argument that a "fiduciary" is limited to trustees of actual or technical trust but has held that "certain relationships not constituting actual [or technical] trusts are within the defalcation exception." *Andy Warhol*, 183 F.3d at 169. In this case, a technical trust flowing from duties imposed by the CT Statute is alleged as the basis for a fiduciary relationship between the Debtor and the Plaintiff. (*See* ECF No. 40 at 9.) A technical trust arises "as a result of defined obligations imposed upon the debtor by statute or common law." *Zielinska v. Smith (In re Smith)*, 469 B.R. 147, 154 n.6 (Bankr. D. Conn. 2012) (Dabrowski, J.) A technical trust is found where the subject statute "(1) defines the trust res, (2) spells out the trustee's fiduciary duties, and (3) imposes a trust prior to and without reference to the wrong that created the debt." *Bologna*, 206 B.R. at 632. *See also Paeplow*, 217 B.R. at 709 ("For the statute to create a trust it must define the

---

[10] An analysis of the landlord and tenant statute with respect to security deposits in Vermont, *see* 9 V.S.A. § 4461, is examined by the court in *Tanneberger v. Paeplow (In re Paeplow)*, 217 B.R. 705, 709-10 (Bankr. D. Vt. 1998). The court determined that the statute (among other things) did not require the landlord to perform any duties with respect to the security deposit (such as opening an escrow account) except to return it and because the landlord held the security deposit for his or her own benefit (and not for the benefit of the tenant) and was not required to segregate the funds, the court concluded that a fiduciary relationship did not exist between a landlord and tenant under the Vermont statute. (*See id.*) *Cf. Stowe v. Bologna (In re Bologna)*, 206 B.R. 628, 632 (Bankr. D. Mass. 1997) (concluding that under Mass. Gen. Laws ch. 186, § 15B, which is similar to the CT Statute, "a landlord holds a tenant's security deposit in a fiduciary capacity within the meaning of § 523(a)(4).").

trust res, spell out the trustee's duties and impose a trust prior to any wrongdoing."). "[T]he statue must manifest an express legislative design to create a trust or trust-type relationship." *In re Bologna, supra* at 632.

Under the CT Statute, the trust res is the security deposit (plus interest) received by the landlord. As stated above, the landlord is appointed as escrow agent with respect to the security deposit and is burdened by certain duties in respect of the security deposit (*e.g.*, to open the escrow account and to maintain the funds in that account pending the termination of the tenancy). Further, the CT Statute makes clear that the security deposit remains the property of the tenant, is exempted from attachment and execution by creditors of the landlord and does not become part of the estate of a landlord in any legal proceeding. All of the foregoing establish a technical trust over which the landlord holds a fiduciary responsibility. *See Smith*, 469 B.R. at 154 ("It is accepted that a debtor acts in a fiduciary capacity under § 523(a)(4) if he serves under a technical . . . trust." (footnote omitted)). For the foregoing reasons, the court determines that a landlord holding a security deposit pursuant to Conn. Gen. Stat. § 47a-21 does so in a "fiduciary capacity" within the purview of 11 U.S.C. § 523(a)(4).

      **b.**      **"Defalcation"**

"Defalcation" generally is defined as "a failure to produce funds entrusted to a fiduciary and applies to conduct that does not necessarily reach the level of fraud, embezzlement or misappropriation." 4 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 523.10 [1][b], at 523-71 (16th ed. 2012). "There has been much debate among the Circuits over whether a 'defalcation' under § 523(a)(4) includes all misappropriations or failures to account or only those

that evince some wrongful conduct." *Denton v. Hyman (In re Hyman)*, 502 F.3d 61, 66 (2d Cir. 2007), *cert. denied*, 555 U.S. 1097 (2009).[11]

In its analysis in *Hyman*, the Second Circuit aligned itself with the First Circuit determining in relevant part:

> In light of this persistent confusion [among the circuits], we now align ourselves with the First Circuit, *see Baylis*, 313 F.3d at 20, in holding that defalcation under § 523(a)(4) requires a showing of conscious misbehavior or extreme recklessness–a showing akin to the showing required for scienter in the securities law context. We believe that these concepts–well understood and commonly applied in the securities law context–strike the proper balance under § 523(a)(4). This standard ensures that the term "defalcation" complements but does not dilute the other terms of the provision–"fraud," "embezzlement," and "larceny"–all of which require a showing of actual wrongful intent.
>
> By requiring the courts to make appropriate findings of conscious misbehavior or recklessness in the course of dischargeability litigation, the standard we adopt today insures that the harsh sanction of non-dischargeability is reserved for those who exhibit "some portion of misconduct." [*Central Hanover Bank & Trust Co. v.*] *Herbst*, 93 F.2d [510, 512 (2d Cir. 1937)]. The standard does not reach fiduciaries who may have failed to account for funds or property for which they were responsible only as a consequence of negligence, inadvertence or similar conduct not shown to be sufficiently culpable. This standard, we believe, also has the virtue of ease of

---

[11] *Hyman* discusses the split among the circuits with respect to the level of fault needed to establish a defalcation for purposes of Section 523(a)(4). *See id.* at 67-68. *See also Bullock v. BankChampaign, N.A. (In re Bullock)*, 670 F.3d 1160 (11th Cir. 2012) (same). Essentially, among the Fourth, Eighth and Ninth Circuits, an innocent act by a fiduciary is enough to constitute a defalcation. *See, e.g., Blyler v. Hemmeter (In re Hemmeter)*, 242 F.3d 1186, 1190 (9th Cir. 2001) ("Even innocent acts of failure to fully account for money received in trust will be held as non-dischargeable defalcations; no intent to defraud is required."). The Fifth, Sixth, Seventh and Eleventh Circuits require a showing of recklessness by the fiduciary to show defalcation. *See, e.g., Bullock*, 670 F.3d at 1166 ("'[D]efalcation under § 523(a)(4) requires more than mere negligence . . . [but] requires a known breach of a fiduciary duty, such that the conduct can be characterized as objectively reckless."). The First Circuit requires a showing of "extreme recklessness" to establish defalcation. *See Rutanen v. Baylis (In re Baylis)*, 313 F.3d 9, 19-20 (1st Cir. 2002) ("[D]efalcation requires some degree of fault, closer to fraud, without the necessity of meeting a strict specific intent requirement . . . . Instead, defalcation requires something close to a showing of extreme recklessness."). The Supreme Court has granted certiorari to resolve the issue. *See Bullock v. BankChampaign, N.A.*, No. 11-1518, 2012 WL 2263286 (U.S. Oct. 29, 2012).

    application since the courts and litigants have reference to a robust body of securities law examining what these terms mean.

*Hyman*, 502 F.3d at 68-69 (citations omitted).

As noted above, the Debtor admitted withdrawing the Security Deposit prior to the termination of the tenancy in violation of the CT Statute and using those funds for his personal purpose. That act was consciously undertaken by the Debtor, was specifically proscribed by the CT Statute and was in violation of the Debtor's fiduciary obligations. Moreover, the Debtor had about twenty-five (25) years experience as a landlord and was aware of his responsibilities under law. Consequently, the court determines that the Debtor's conduct constituted a "defalcation" within the meaning of Section 523(a)(4). Accordingly, the subject debt is deemed nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

### 2.  **11 U.S.C. § 523(a)(6)**

Because the court found the Debt nondischargeable under Section 523(a)(4), the court will not undertake a Section 523(a)(6) analysis.

## V.  CONCLUSION

For the reasons set forth above, the court hereby concludes that the Debt is nondischargeable in this chapter 7 case.[12] Accordingly, it hereby is **ORDERED** that, on or before November 30, 2012, the Plaintiff shall file (and serve upon the Debtor) a calculation (the "Calculation") of Interest due on the Security Deposit under applicable state law. The Debtor may file an objection to the Calculation on or before December 14, 2012. If an objection is filed by the Debtor in accordance

---

[12] The Plaintiff requests entry of judgment in the amount of $3,681.00 (*see* ECF No. 40 at 11). However, the court is not able to determine the accuracy of that amount because the Plaintiff presented no evidence on which the court can calculate the Interest that is due and owing.

- 19 -

herewith, a hearing shall be scheduled with respect to the Calculation by a separate notice of hearing. If no objection is filed, judgment may enter against the Debtor in accordance herewith and in accordance with the Calculation. If a Calculation is not filed and served in accordance herewith, Interest will be deemed waived and judgment will enter in accordance with this memorandum.[13]

**IT IS SO ORDERED.**

Dated: November 19, 2012                                                  BY THE COURT

*Lorraine Murphy Weil*
Lorraine Murphy Weil
Chief United States Bankruptcy Judge

---

[13] In the Plaintiff's Brief, she requests that the automatic stay in respect of the Small Claims Action be lifted. (*See* ECF No. 40 at 11.) However, the Debtor has already received his chapter 7 discharge in the underlying bankruptcy case (*see* Case ECF No. 14) which resulted in the automatic termination of the stay as to him personally. *See* 11 U.S.C. § 362(c)(2) (West 2012) (stating that the automatic stay continues into effect until the earliest of either the dismissal of the case, the closing of the case or the granting or denial of discharge).